UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | |
|---|---|
| JOHN H., § § § Plaintiff, § § v. § § COMMISSIONER OF SOCIAL SECURITY, § § Defendant. § | Case # 1:20-cv-921-DB MEMORANDUM DECISION AND ORDER |

## **INTRODUCTION**

Plaintiff John H. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act, and his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 14).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 11, 12. Plaintiff also filed a reply brief. *See* ECF No. 13. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 11) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 12) is **GRANTED**.

## **BACKGROUND**

Plaintiff protectively filed applications for DIB and SSI on March 28, 2017, alleging disability beginning March 1, 2016 (the disability onset date), due to "problems with both feet; slipped disc in lower back, learning disability, right rotator cuff surgery; and tremor disorder."

Transcript ("Tr.") 183-198, 234. The claims were denied initially on August 8, 2017, after which Plaintiff requested a hearing. Tr. 10. On March 21, 2019, Administrative Law Judge Stephen Cordovani ("the ALJ") presided over a video hearing from Buffalo, New York. Tr. 10, 28-93. Plaintiff appeared and testified from Olean, New York, and was presented by Kelly Laga, an attorney. *Id*. Timothy P. Janikowski, Ph.D., an impartial vocation expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on April 19, 2019, finding that Plaintiff was not disabled. Tr. 10-23. On May 21, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-3. The ALJ's April 19, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual

3

functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his April 19, 2019 decision:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2016;

2. The claimant has not engaged in substantial gainful activity since March 1, 2016, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.);

3. The claimant has the following severe impairments: right knee chondromalacial patella, medial plica syndrome, severe synovitis, and chrondromalcia medial tibial plateau status-post arthroscopic repair, bilateral plantar fasciitis, obesity and chronic obstructive pulmonary disease (COPD) (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416. 967(a)[1] except the claimant can occasionally climb ramps and stairs but never kneel, crouch, or crawl. The claimant can never full squat. The claimant can occasionally balance and stoop but never climb ladders, ropes or scaffolds. The claimant can occasionally push and pull but must never operate foot controls. The claimant must avoid work on uneven ground. The claimant can have no concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants. The claimant requires the use of a cane during periods of ambulation;

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7. The claimant was born on June 1, 1977 and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

---

[1] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a);

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 10-23.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on March 28, 2017, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 23. The ALJ also determined that based on the application for supplemental security benefits protectively filed on March 28, 2017, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## **ANALYSIS**

Plaintiff asserts two points of error. Plaintiff first argues that the ALJ relied on opinions from state agency reviewing consultant R. Dickerson, M.D. ("Dr. Dickerson"), and internal medicine consultative examiner Nikita Dave, M.D. ("Dr. Dave"), but the opinions were "stale" because they were rendered before Plaintiff's foot and back surgeries. *See* ECF No. 11-1 at 7-9. Plaintiff's second point argues that Dr. Dave's opinion was unreliable because it was "vague and does not support the RFC." *See id*. at 9-10. Plaintiff also argues that the ALJ should have sought clarification of Dr. Dave's opinion because the opinion stated that Plaintiff's limitation for prolonged standing and walking was both moderate and mild-to-moderate. *See id*. at 9-10.

The Commissioner argues in response that the ALJ's physical RFC finding for a reduced range of sedentary work is supported by substantial evidence. *See* ECF No. 12-1 at 6-18. With respect to Plaintiff's first argument, the Commissioner argues that under the regulations, "the ALJ

5

need not rely on any opinion to support the RFC finding, let alone a 'recent' opinion." *Id*. at 6-8 (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)). Further, argues the Commissioner, even though the ALJ was not required to rely on any medical opinion, the ALJ nevertheless relied on the opinions of Dr. Dickerson and Dr. Dave and clearly explained his rationale for the weights assigned. *See id*. at 8-10. As to Plaintiff's argument that the opinions were stale, the Commissioner argues that the opinions were not stale because they were rendered during the relevant period, and there is no evidence that Plaintiff's condition worsened over time. *See id*. at 12. The Commissioner further argues that, contrary to Plaintiff's argument that the ALJ should have developed the record by obtaining a more recent medical opinion and by requesting a clarification from Dr. Dave about what her opinion meant (*see* ECF No. 11-1 at 9-10), the ALJ had sufficient evidence upon which he could base his decision, including Plaintiff's complete treatment records before and after his surgeries, the medical opinion evidence, and Plaintiff's statements at the hearing and throughout the record about his daily activities. *See id*. at 12-18.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review, the Court finds that the ALJ properly evaluated the medical opinion evidence and the other evidence of record and reasonably found that Plaintiff was capable of performing a reduced range of sedentary work. Accordingly, substantial evidence supports the ALJ's conclusions, and the Court finds no error.

A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence

7

available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1527, 416.927. For claims filed on or after March 27, 2017, such as Plaintiff's claim, no opinions are entitled to any deference or specific evidentiary weight. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Instead, an ALJ need only articulate how he considered a medical opinion from a medical source by indicating how persuasive he considered a medical opinion to be. *Id*. ("The factors of supportability and consistency are the most important factors we consider when we determine how persuasive we find a medical source's medical opinion.)

Accordingly, an ALJ is generally not required to explain how he considered factors other than consistency and supportability. *See id*.

Plaintiff first challenges the ALJ's assessment of the opinions of Dr. Dickerson. On August 7, 2017, Dr. Dickerson reviewed Plaintiff's file and opined that Plaintiff could perform light work with occasional postural limitations. Tr. 106-08. Consistent with the requirements of light work, Dr. Dickerson opined that plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, sit about six hours in an eight-hour workday, and stand-walk about six hours in an eight-hour workday. *Id*. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (explaining requirements of light work). Notably, a finding that a claimant can do light work is also generally a finding that he can do sedentary work. *Id*. Thus, Dr. Dickerson's opinion supports the ALJ's finding that Plaintiff could do sedentary work.

The ALJ explained that he found Dr. Dickerson's opinion persuasive because the doctor was fully familiar with the Social Security policies and regulations regarding disability. Tr. 20. *See* 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5)) (explaining that in evaluating a medical opinion the ALJ will consider the medical source's familiarity with the disability program). The ALJ also explained that, while he found Plaintiff somewhat more limited than Dr. Dickerson opined—and, therefore, restricted Plaintiff to sedentary, rather than light work—he found that Dr. Dickerson's conclusions were generally consistent with other evidence in the record. Tr. 20. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (explaining that the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinion will be found). As the ALJ pointed out, Dr. Dickerson's opinion was also consistent with the July 18, 2017 examination findings and report of Dr. Dave, which Dr. Dickerson had reviewed. Tr. 20, 101, 375-79.

9

Dr. Dave examined Plaintiff on July 18, 2017, and found that Plaintiff had full motor strength in the upper and lower extremities; full range of motion of his back and knees; negative straight leg raise testing; normal reflexes; and intact sensation. Tr. 377-78. Dr. Dave observed that Plaintiff walked with a slowed gait, but did not use an assistive walking device, and was able to rise from a chair and get on and off the examination table without difficulty. Tr. 376-77. Dr. Dave also noted that, despite Plaintiff's complaints of pain in his right foot and knee, Plaintiff reported he was able to cook; take care of his personal grooming; clean and do laundry; shop; and provide childcare. Tr. 376.

Based on her examination findings and Plaintiff's statements, Dr. Dave opined that Plaintiff had a moderate limitation in prolonged standing, prolonged walking, lifting, carrying, pushing and pulling heavy objects due to his right foot impairment; and a mild-to-moderate limitation for lifting, carrying, pushing, pulling, prolonged standing, walking, repetitive bending, and twisting due to his lumbar spine impairment. Tr. 378. While Plaintiff argues that this opinion is ambiguous since it is not clear whether the limitation in standing and walking is moderate or mild-to-moderate (*see* ECF No. 11-1 at 9), the Court finds no ambiguity. Dr. Dave indicated that Plaintiff's limitation in standing and walking was mild-to-moderate due to the spinal impairment but moderate due to the foot impairment. Tr. 378. Therefore, the limitation is moderate overall. Notably, Dr. Dave did not assess any restrictions in Plaintiff's ability to sit, which is the primary requirement of sedentary work. *See id*.

Plaintiff also argues that Dr. Dave's opinion is vague because she did not define terms such as moderate. *See* ECF No. 11-1 at 10. Plaintiff's argument is simply wrong. The Second Circuit, as well as its district courts, have found that up-to-moderate restrictions are consistent with an ability to do light work, which is even more physically demanding than the sedentary work to which the ALJ restricted Plaintiff. *See White v. Berryhill*, 753 F. App'x 80 (2d Cir. 2019) (finding

10

that consultative examiner's assessment of moderate limitations supported a modified light RFC); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (rejecting plaintiff's argument that the consultative examiner's opinion was "incomplete and vague" and affirming RFC for light work with occasional climbing balancing, stooping, kneeling, crouching, and crawling, where the consultative examiner opined that plaintiff had a "mild to moderate limitation for sitting for a long time, standing for a long time, walking for a long distance, pushing, pulling, or heavy lifting."); *Randy L.B. v. Comm'r of Soc. Sec.*, 18-CV-0358, 2019 WL 2210596, at *7 (N.D.N.Y. May 22, 2019) (explaining that "there is voluminous legal authority . . . that supports the ALJ's finding of light work based in part on the mild to moderate limitations opined by [consultative examiner] Dr. Jenouri"); *Jordan v. Comm'r of Soc. Sec.*, No. 16-cv-9634 (KHP), 2018 WL 1388527, at *10 (S.D.N.Y. Mar. 19, 2018) (citing cases and stating that courts in this circuit "have found that 'moderate' limitations for standing, walking, sitting, and lifting are consistent with the ability to do light work"); *April B. v. Saul*, 18-CV-0682, 2019 WL 4736243, at *5 (N.D.N.Y. Sept. 27, 2019) ("Indeed, moderate limitations in standing and walking [and lifting] are consistent with light work.").

The ALJ explained that he found Dr. Dave's opinion "somewhat persuasive," since it was supported by his detailed examination findings, as discussed above. Tr. 20. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (explaining that in evaluating medical opinions, the more a medical source presents relevant objective evidence and supporting explanations to support his or her opinion, the more persuasive that opinion will be found). The ALJ also found that Dr. Dave's opinion regarding walking was consistent with other evidence in the record, such as Plaintiff's use of a cane. Tr. 20. However, the ALJ explained that he found Dr. Dave's opinion only somewhat persuasive because Dr. Dave rendered her opinion prior to Plaintiff's right knee procedure and because Dr. Dave considered a low back condition which was not severe and failed to consider

11

Plaintiff's right knee complaints. *Id*. Accordingly, the ALJ determined that other evidence and medical opinions were more consistent and supported by the record as a whole than Dr. Dave's opinion. *Id*.

Plaintiff also argues that the opinions of Dr. Dickerson and Dr. Dave were stale because Plaintiff had surgeries after they rendered their opinions. *See* ECF No. 11-1 at 7-9. Plaintiff's argument is unavailing. First, the opinions were timely because Dr. Dickerson and Dr. Dave both rendered their opinions during the relevant period. *See Andrews v. Berryhill*, 2018 WL 2088064, at \*3 (W.D.N.Y. May 4, 2018) (noting that an opinion rendered during the relevant period was not stale). Second, as the ALJ correctly noted, the later-submitted evidence does not show that Plaintiff was more restricted. Tr. 20. Thus, there is no evidence that Plaintiff's condition worsened over time. *See Camille v. Colvin*, 652 F. App'x 25, 28 (n.4) (2d Cir. 2016) (rejecting the argument that a state agency physician's opinion was stale where the evidence submitted later did not differ materially from the evidence reviewed by the State agency physician); *Andrews*, 2018 WL 2088064, at \*3 (finding that ALJ did not err in relying on dated opinions where there was no indication the plaintiffs "condition had significantly deteriorated after the issuance of . . . [the] opinions such that they were rendered stale or incomplete").

The record reflects that the ALJ considered the evidence before and after Dr. Dickerson's opinion (which is more recent than Dr. Dave's opinion). Tr.18-20. The ALJ noted that physical examinations, prior to Dr. Dickerson's August 2017 opinion showed normal findings, including normal motor strength, full range of motion, non-antalgic gait, normal sensation, and a healthy appearance. Tr. 18, 355, 364, 371, 386. Plaintiff's findings did not change after his surgeries. Following his August 2017 left plantar fascial release and his September 2017 right-foot plantar fascial release, plaintiff had good flexion and strength. Tr. 19, 470-72. During a November 22, 2017 examination, Plaintiff had a stable gait, full range of motion of his extremities, intact

sensation, intact motor strength, and no neurological deficits. Tr. 436. Following his May 7, 2018 right knee surgery, Plaintiff was "doing well" (Tr. 389) and reported improved strength and range of motion (Tr. 409). While Plaintiff continued to complain of some pain and instability which was aggravated by kneeling or walking (though not by sitting) (*see* Tr. 395, 409), the ALJ noted that on most examinations, Plaintiff was in no acute distress, and he had a normal gait, normal sensation, normal reflexes, full motor strength, normal coordination, and no instability in his knee (Tr. 494, 495, 502-03). Tr. 17-18. Furthermore, although Plaintiff expressed frustration in July 2018 because he was unable to run after his knee surgery (Tr. 409), sedentary work does not require him to do any activity as physically demanding as running.

Plaintiff's treatment notes also show that he was encouraged to exercise after his surgeries. During visits on October 12, 2018, and February 8, 2019, Plaintiff's primary care physician, Zia Sheikh, M.D. ("Dr. Sheikh"), advised him to engage in a regular exercise plan, which indicates that his knee and foot conditions were not barriers to physical exercise. Tr. 503, 508. An ability to exercise is consistent with an ability to do light or medium work, which is much more exertionally demanding than the sedentary work to which the ALJ restricted Plaintiff. *See Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (finding that the ALJ properly considered treating physician's indication that the claimant should continue an active exercise regimen in support of a findings of light work); *see Serra v. Sullivan*, 762 F.Supp. 1030, 1034 (W.D.N.Y. 1991) (finding that RFC for medium work was supported by treatment notes showing improvement after surgery and by a treating doctor's statement that plaintiff could resume a "normal lifestyle with an exercise program").

The ALJ also noted inconsistencies in the record that diminished the persuasiveness of Plaintiff's statements regarding his alleged disabling impairments and symptoms. Tr. 17. For example, the ALJ noted that although Plaintiff testified that he was a prescribed cane, records show

13

that he frequently had a normal and steady gait. Tr. 17, 355, 387, 436, 494, 495, 502-03. The ALJ also noted that Plaintiff's treatment notes showed evidence of non-compliance with treatment, which undermined his allegations of disability and provided further support for the ALJ's findings. Tr. 17. *See* SSR 16-3p, 2017 WL 5180304 *9 (explaining that if the individual fails to follow prescribed treatment that might improve symptoms, the ALJ may find that the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence in the record); *see also Campbell v. Comm'r*, 465 F. App'x 4, 7 (2d Cir. 2012) (noting that that when the claimant had seizures it was often caused by his failure to take medications).

As the ALJ pointed out, Plaintiff was taking his Gabapentin medication "sporadically" and was advised to take the medication as directed. Tr. 17, 370. The ALJ also noted that despite his complaints of COPD and being advised to stop smoking, Plaintiff continued to use tobacco. Tr. 17, 501, 505. The ALJ also noted evidence in the record showing that Plaintiff was discharged from Orthopedics for frequent no-shows and cancellations. Tr. 302. The ALJ also considered whether financial hardship was a potential barrier to Plaintiff receiving the necessary treatment and found no evidence in the record that Plaintiff was unable to obtain low cost or no-cost medical care as necessary. Tr. 17. Thus, the ALJ reasonably determined that the foregoing evidence of non-compliance demonstrated a possible unwillingness to do what was necessary to improve plaintiff's conditions and may also have been an indication that plaintiff's symptoms were not as severe as purported. *Id.*

The ALJ also noted that, even before his surgeries, Plaintiff worked as a janitor for part of the time that he alleged he was disabled. Tr. 17, 227, 358. The ALJ appropriately noted that this work activity, while not substantial gainful activity, nonetheless indicates that Plaintiff's daily activities have, at least at times, been somewhat greater than Plaintiff generally reported. Tr. 17. *See* 20 C.F.R. §§ 404.1571, 416.971 (explaining that even if the work a claimant had done was not

substantial gainful activity, it may show that the claimant can do more work than he actually did); *Rivers v. Astrue*, 280 F. App'x 20, 23 (2d Cir. 2008) (noting that while claimant's work during the relevant period did not meet the threshold for substantial gainful activity, he worked at levels consistent with light work); *Cabrero-Gonzalez v. Colvin*, No. 13-CV-6184-FPG, 2014 WL 7359027, at *19 (W.D.N.Y. Dec. 23, 2014) (finding that the ALJ appropriately discredited claimant's allegations in part because he worked after his alleged disability onset date). Here, Plaintiff's work as a janitor was more demanding than the sedentary work to which the ALJ restricted him.

In addition to his work activity, the ALJ also relied on Plaintiff's activities of daily living to conclude that he could do sedentary work. Tr. 17. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i))). Plaintiff engaged in childcare of his three children, prepared simple meals, cleaned, did laundry, visited with friends and family, shopped, used a computer and smart phone, handled his finances, drove, and used public transportation. Tr.17, 35-37, 376, 380, 382. Activities such as those performed by Plaintiff, support a finding of light work, which is even more physically demanding than sedentary work. *See Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (holding that the ALJ properly considered the claimant's reported daily activities, such as walking her dog and cleaning her house, in support of an RFC finding for light work); *Poupore*, 566 F.3d at 307 (holding that the claimant's varied activities, including providing childcare, occasional vacuuming, washing dishes, driving, watching television, reading, and using the computer, supported an RFC finding for light work);

15

*see Ortiz v. Saul*, No. 1:19-cv-00942 (ALC), 2020 WL 1150213, at *1 (S.D.N.Y. Mar. 10, 2020) ("Plaintiff's ability to perform a range of light household chores, including cooking, shopping, cleaning, and laundry . . . support[s] a light work RFC finding.") .

Finally, despite the extensive record evidence recited above, Plaintiff claims that it was not enough, and the ALJ should have developed the record further by obtaining a more recent medical opinion and by requesting a clarification from Dr. Dave about what her opinion meant. *See* ECF No. 11-1 at 9-10. For the reasons already explained, Plaintiff's claim lacks merit. As discussed above, a medical opinion is not required to support an RFC finding, nor is a more recent opinion required where, as here, the later-submitted evidence does not show that Plaintiff was more restricted than found by the ALJ. Neither was Dr. Dave's opinion vague or ambiguous as Plaintiff argues. As discussed above, Dr. Dave indicated that Plaintiff's limitation in standing and walking was mild-to-moderate due to the spinal impairment but moderate due to the foot impairment, which the Court has already determined, amounts to a moderate limitation overall. Thus, there was no reason for the ALJ to request clarification from Dr. Dave.

Furthermore, the Commissioner's regulations in effect at the time of the ALJ's decision require that the ALJ must develop the record further only if the evidence he already has is insufficient, and it is the ALJ who makes that insufficiency determination. *See* 20 C.F.R. §§ 404.1520b(b)(1), 416.920n(b)(1) ("If any of the evidence in your case record, including any medical opinions, is inconsistent, we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have"). However, "[t]he ALJ is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability." *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)) (internal citations omitted); *see Abbott v. Colvin*, 596 F. App'x 21 (2d Cir. 2015) (finding that the ALJ did not err in failing to seek

16

additional information from a treating source because there were no obvious gaps in the record); *see Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012) (finding that the ALJ was not required to re-contact treating source for a medical source statement because record contained complete medical history); *see also Kunkel v. Comm'r of Soc. Sec.*, No. 12-CV-6478 CJS, 2013 WL 4495008, at *16 (W.D.N.Y. Aug. 20, 2013). Here, the ALJ had sufficient evidence upon which he could base his decision, including Plaintiff's complete treatment records, the opinion of state agency reviewing physician Dr. Dickerson, the findings and opinion of consultative examiner Dr. Dave, as well as Plaintiff's statements at the hearing and throughout the record about his daily activities. Accordingly, the Court finds that the record before the ALJ was complete, and nothing more was required of him.

While Plaintiff may disagree with the ALJ's conclusion, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence); *Bonet*, 523 F. App'x at 59 ("Under this very deferential standard of review, once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise."). Further, it is the ALJ's duty to evaluate conflicts in the evidence. *See* 20 C.F.R. § 404.1527(c)(i); *Brault*, 683 F.3d at 448 ("Once the ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would have to conclude otherwise"); *Monroe*, 676 F. App'x at 7 (quoting *Veino*, 312 F.3d at 588) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

For all the reasons discussed above, the Court finds that the ALJ properly considered the record as a whole, including the conflicts in the medical opinion evidence, and his finding that

Plaintiff retained the functional ability to perform light work with the noted limitations, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE